

# NUMBER 13-07-251-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ERNESTO GONZALES,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

**On appeal from the 36th District Court of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Benavides**

On April 5, 2006, appellant, Ernesto Gonzales, was found guilty of murder and sentenced to life imprisonment in the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. §19.02 (Vernon 2003). Gonzales argues that the trial court should have sua sponte ordered a mental competency hearing upon learning that Gonzales had alcohol

amnesia and could not remember shooting the alleged victim.  *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004 (Vernon 2006).  We affirm.

## I.  Background

On May 27, 2006, Gonzales shot and killed Gabriel DeLeon while attending a graduation party at the home of Gonzales' mother.  Gonzales and DeLeon were "best friends," and Gonzales' sister, Maria Ana, was married to DeLeon.  Family and friends, including Maria Ana, Alice Munoz, Jimmy Gonzalez, Donald Gonzalez, and Amber Sidner, were present when Gonzales and DeLeon argued, and they witnessed the shooting.  Both Gonzales and DeLeon were intoxicated at the time of the shooting

Jason Maley and Denis Anders, sergeants with the Aransas Pass Police Department, were the investigating officers.  They responded to a call reporting a shooting at the Gonzales residence.  Upon arrival, the officers found DeLeon had been shot multiple times and was lying face down in the dirt off to the side of the driveway.

While at the scene, Officer Maley received a call from the dispatcher advising him that a possible witness to the shooting had come into the department.  He then went to the department and spoke to the witness, Amy Sidner who stated that she saw Gonzales shoot DeLeon.  She also stated that Gonzales was at her apartment, which she shares with Alice Munoz, Gonzales' girlfriend.  An arrest warrant was issued, and the officers located Gonzales and Munoz asleep in bed.  Gonzales was then arrested.

At the time of his arrest, the police found a Glock 40 pistol in Gonzales' possession.  The police obtained consent from Munoz to search the apartment, and they found a Burst of Thunder 380 caliber weapon.  The police later determined that the second weapon was the gun used to shoot DeLeon.

Jeanne Grumbles, lieutenant detective with Aransas Pass Police Department, recovered the shell casings at the scene. She was present at DeLeon's autopsy, where she obtained the slugs in DeLeon's body from the medical examiner. Both sets of casings were sent to the lab at Texas Department of Public Safety, and the casings matched the weapon found at Munoz's apartment. Blood samples were taken from Gonzales' forehead and shirt; both were matched to DeLeon.

Gonzales was indicted for murder and, after a jury trial, was convicted. Immediately thereafter, the jury considered the punishment.

Gonzales testified at the punishment stage of his trial.[1] He has a ninth-grade education and has two children who are eleven and six years old. He has held odd jobs throughout his life but no steady employment. He began drinking when he was thirteen years old. He testified that he drinks everyday until he passes out. He also suffers blackouts. When he was fifteen or sixteen years old, he went to Shoreline Hospital to seek treatment for his drinking and drug problem. He smokes marihuana and began taking Xanax prior to the shooting.

On the day of shooting, he was not only drinking, but he also took Xanax and smoked marihuana. Gonzales testified that he does not remember the incident. After the shooting, while he was being held in the county jail, he was seen by a mental health professional from MHMR[2] and evaluated for depression, but was not given treatment or medication.

---

[1] At first, Gonzales did not want to testify but after his attorney on the record questioned him on the standabout the benefits of his testimony, Gonzales changed his mind and did testify.

[2] "MHMR" is the Department of Mental Health and Mental Retardation

Troy Martinez, a forensic psychologist, evaluated Gonzales. His evaluation included two types of formulations of biophysical influences that contributed to shaping Gonzales' life generally and at the time of the shooting. He diagnosed Gonzales with recurrent and severe major depressive disorder and alcohol and drug abuse. He also noted that due to alcohol and drug abuse, Gonzales suffers from primary amnesia or blackouts, and that during these blackouts, Gonzales had a tendency towards violence. He also testified that alcohol and drug use simultaneously can cause prolonged effects. Finally, he stated that Gonzales needs treatment for both his depression and alcohol and drug dependancy and that Gonzales would be a good candidate for this type of treatment.

After the punishment stage, the jury assessed punishment at life imprisonment in the Texas Department of Criminal Justice. This appeal ensued.

## II. Incompetency

Gonzales argues that the trial court should have sua sponte ordered a competency hearing because he had no recollection of the incident. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004.

### A. Standard of Review

The trial court's decision on whether to conduct a competency inquiry is reviewed under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999); *Garcia v. State*, 595 S.W.2d 538, 541-42 (Tex. Crim. App. 1980); *Salahud-Dinn v. State,* 206 S.W.3d 203, 207 (Tex. App.–Corpus Christi 2006, pet. ref'd). A trial court abuses its discretion if the decision was "arbitrary or unreasonable" or made without

regard to "guiding principles." *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

## B.    Applicable Law

A person whose mental condition is such that he lacks the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subject to a trial." *McDaniel v. State*, 98 S.W3d 704, 709 (Tex. Crim. App. 2003) (quoting *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975)). A conviction of an accused person while he is legally incompetent violates due process. *Id.* In order to protect a criminal defendant's constitutional rights, a trial court must inquire into the accused's mental competency once the issue is sufficiently raised. *Id.* An accused person is presumed competent to stand trial and must be found competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b).

Under Texas Code of Criminal Procedure article 46B.004, either party or the trial court may suggest that the defendant is incompetent to stand trial. *Id.* art. 46B.004(a) (Vernon 2006). If evidence suggesting that the defendant may be incompetent to stand trial comes to the attention of the court, the court, on its motion, must suggest that the defendant may be incompetent to stand trial. *Id.* Art. 46B.004(b). Once the issue of competency to stand trial has been sufficiently raised, the court must determine by "informal inquiry whether there is some evidence from any source that would support a finding that defendant may be incompetent to stand trial." *Id.* Art. 46B.004(c).

In order for the issue of competency to be sufficiently raised, there must be evidence to raise a "bona fide doubt" in the mind of the trial judge. *Salahud-Dinn,* 206 S.W.3d at 208. A bona fide doubt is raised if the evidence indicates "recent severe mental illness, or at least moderate mental retardation, or truly bizarre acts by the defendant." *Id.* (citing *Collier v. State*, 959 S.W.2d, 621, 625 (Tex. Crim. App. 1997) (en banc)). The question before this Court is whether the trial court abused its discretion when it did not conduct a competency inquiry. TEX. CODE CRIM. PROC. ANN. art. 46B.004(b); *Alcott v State*, 51 S.W.3d 596, 601 (Tex. Crim. App. 2001).

### III. Analysis

Gonzales argues that his alcohol and drug abuse resulted in primary amnesia, which raised a bona fide doubt that he was competent to stand trial and required the trial court to hold a competency hearing. A trial judge need not perform a competency hearing unless evidence is presented that raises a bona fide doubt in a judge's mind regarding the defendant's "present ability to consult with his lawyer with a reasonable degree of rational understanding" or his "rational as well factual understanding of the proceedings against him." *McDaniel v. State*, 98 S.W.3d 704, 705 (Tex. Crim. App. 2003). The Texas Court of Criminal Appeals has held that an accused's loss of memory regarding the facts of the event for which he is charged, standing alone, does not render him incompetent to stand trial. *Jackson v. State*, 548 S.W.2d 685, 691 (Tex. Crim. App. 1977). This is because "amnesia concerning the crime 'does not render a defendant unable to comprehend his position or to consult intelligently with counsel in the preparation of his defense.'" *Id.*

6

(quoting *State v. Pugh*, 283 A.2d 537, 540 (N.J. Super. Ct. App. Div. 1971)).

In *Alcott,* the court of criminal appeals found that the trial court was within its discretion when it failed to sua sponte order a competency hearing based on the defendant's claim that he could not remember the events leading up to his arrest. *Alcott v. State*, 51 S.W.3d 596 (Tex. Crim. App. 2001). A pretrial examination had been conducted by a doctor who concluded that Alcott was competent to stand trial even though he took prescription drugs for mental illnesses, including personality disorder, dementia, memory problems, and depression. *Id.* at 598. During the sentencing phase, Alcott could not remember whether the enhancement allegation was true and had several outbursts. *Id* The court found that none of these instances raised a "bona fide doubt." *Id.*; *Collier,* 959 S.W.2d at 625 (holding that the evidence of defendant's mental illness was insufficient to raise a bona fide doubt).

Gonzales understood of the proceedings and able to assist his counsel in his defense. No one in his family or friends testified to any mental illness or retardation. Moreover, Martinez did not state that Gonzales was unable to comprehend the proceedings or unable to assist with his defense. There were no bizarre acts displayed by Gonzales. The mere fact that, due to his alcohol and drug abuse, he could not remember the actual shooting, did not raise a bona fide doubt in the trial judge sufficient to order a competency hearing. *Jackson*, 548 S.W.2d at 691. Accordingly, we overrule Gonzales' issue.

## IV.  Conclusion

Having overruled Gonzales' sole issue, the judgment of the trial court is affirmed.

_____
GINA M. BENAVIDES
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 28th day of August, 2008.

8